**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Dr. Penny M. Wilkie, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING IN PART AND** |
| | ) | **DENYING IN PART DEFENDANT'S** |
| | ) | **MOTION TO DISMISS** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | Case No. 4:07-cv-027 |
| The Department of Health | ) | |
| and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is the Defendant's "Motion to Dismiss/Motion for Summary Judgment," filed on October 15, 2007. See Docket 17. The Plaintiff filed a response in opposition to the motion on November 14, 2007. See Docket 20. For the reasons set forth below, the Court grants in part and denies in part the motion to dismiss and finds as moot the motion for summary judgment.

I.     **BACKGROUND**

The plaintiff, Dr. Penny M. Wilkie, was the Clinical Director of the Quentin Burdick Memorial Health Care Facility, in Belcourt, North Dakota, until her resignation on March 17, 2006. The defendant, the Department of Health and Human Services, operates the Quentin Burdick Memorial Health Care Facility. Wilkie claims that her resignation was involuntary because she was subjected to harassment and discriminatory conduct that made her working conditions intolerable.

On August 5, 2005, Wilkie contacted the Defendant's Equal Employment Opportunity (EEO) counselor regarding the alleged discrimination. On September 9, 2005, an EEO Counselor's report was completed on Wilkie's behalf. See Docket 20-5. Wilkie alleged that she was subjected

to discrimination based on sex and reprisal. See Docket 20-5. Wilkie was notified of her right to file a discrimination complaint. See Docket 20-5. On September 21, 2005, Wilkie filed a formal EEO complaint in which she alleged discrimination based on sex and retaliation. See Docket 19-4. On January 17, 2006, the Agency accepted her EEO complaint and initiated an investigation, which was conducted from February 20, 2006, to March 29, 2006. The final report of the investigation was submitted on April 7, 2006. On May 15, 2006, Wilkie requested a hearing before the Equal Employment Opportunity Commission (EEOC).

On or about July 3, 2006, and while Wilkie's complaint was pending before the EEOC, Wilkie filed a "mixed case appeal"[1] with the Merit Systems Protection Board (MSPB). See Docket 19-9. In that appeal, Wilkie raised the same discrimination claims that were pending before the EEOC.

On July 10, 2006, the MSPB held that unless Wilkie were to present a non-frivolous allegation supported by factual evidence that her "resignation was obtained through duress or coercion, that a reasonable person would have been misled by the agency's statements, or that some other condition precluded a voluntary decision, the appeal [would] be dismissed for lack of jurisdiction without benefit of a hearing." See Docket 19-6. The MSPB ordered Wilkie to file factual evidence within twenty days supporting her claim that she had involuntarily resigned. See Docket 19-6. Wilkie's deadline to file factual evidence was extended to September 15, 2006, and a hearing to determine whether the MSPB had jurisdiction was scheduled for September 19, 2006. See Docket 19-10. The hearing never took place.

---

[1] A "mixed case appeal" is defined as an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age. 29 C.F.R. § 1614.302(a)(2).

Wilkie's EEO complaint was dismissed on October 10, 2006. See Docket 19-5. However, Wilkie's complaint was held in abeyance by the EEOC pending her appeal before the MSPB. See Docket 19-5.

On November 30, 2006, the parties agreed to dismiss Wilkie's appeal before the MSPB "without prejudice to refiling" so that the parties could pursue settlement discussions. See Docket 19-12. The jurisdiction hearing before the MSPB was scheduled for March 27-28, 2007. See Docket 19-12. On February 20, 2007, Wilkie re-docketed her appeal with the MSPB. See Docket 19-8. Thereafter, the MSPB indicated in an "Initial Decision" filed on February 27, 2007, that instead of proceeding with the planned jurisdiction hearing, Wilkie had decided to withdraw her appeal to the MSPB "to pursue her discrimination-based challenge to the allegedly involuntary resignation through trial de novo in Federal District Court." See Docket 19-13. The MSPB granted Wilkie's request to withdraw her appeal "with a limited right to refile this appeal within 30 days of any ruling from the District Court that it would not allow the trial de novo for failure-to-exhaust-administrative remedies reasons." See Docket 19-13. Thereafter, on April 3, 2007, the MSPB dismissed Wilkie's appeal. See Docket 19-13.

Wilkie then filed a complaint in federal district court on April 2, 2007. See Docket 1. Wilkie contends that the Defendant violated her rights pursuant to Title VII of the Civil Rights Act of 1964; that she was subjected to intentional and negligent infliction of emotional harm; that her First and Fourteenth Amendment rights were violated; that the Defendant defamed her character through libel and slander; and that her rights as a whistle blower were violated.

The Defendant contends that the Court does not possess subject matter jurisdiction over the Title VII cause of action; that the Court does not possess subject matter jurisdiction over Wilkie's

3

causes of action for intentional and negligent infliction of emotional harm and defamation because such claims do not fall within the waiver of sovereign immunity under the Federal Tort Claims Act; and that Wilkie's whistle blower cause of action should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because she has not alleged any facts to support her claims.

## II.   LEGAL DISCUSSION

### A.   TITLE VII CLAIM

The first issue is whether Wilkie has exhausted administrative remedies in her pursuit of an appeal before the Merit Systems Protection Board (MSPB). The MSPB is "an independent, quasi-judicial federal administrative agency established to review civil service decisions." McAdams v. Reno, 64 F.3d 1137, 1141 (8th Cir. 1995); 5 C.F.R. §§ 1201.2, 1201.3. The MSPB's appellate jurisdiction is limited to a review of "adverse employment actions," which include: "a removal, a suspension for more than 14 days, a reduction in grade, a reduction in pay, or a furlough of 30 days or less." Sloan v. West, 140 F.3d 1255, 1259 (9th Cir. 1998); 5 C.F.R. § 1201.3. The MSPB "also has pendent jurisdiction over discrimination claims brought in connection with an 'adverse action' otherwise appealable to it." 140 F.3d at 1259. Such an action is commonly referred to as a "mixed case." See Butler v. West, 164 F.3d 634, 638 (D.C. Cir. 1999) (A mixed case is "an adverse personnel action subject to appeal to the MSPB coupled with a claim that the action was motivated by discrimination."). The regulations "that structure the prosecution of mixed cases are extremely complicated, but they can be reduced to a decision tree, albeit a somewhat elaborate one." Id. at 638.

The prosecution of mixed cases is governed by 5 U.S.C. § 7702. When bringing a mixed case, the employee must first elect to proceed in one of two forums. Frank v. Ridge, 310 F. Supp. 2d 4, 8 (D.C. Cir. 2004). The employee may file a "mixed case complaint" with her employing agency's EEO office or a "mixed case appeal" with the MSPB, but not both. Id.; 29 C.F.R. § 1614.302(b). The filing of a "mixed case complaint" with the EEO or a "mixed case appeal" with the MSPB "demarcates the point of no return." Stoll v. Principi, 449 F.3d 263, 266 (1st Cir. 2006). "From that point forward, the complainant must exhaust her claim in the chosen forum." Id.

Because Wilkie chose to proceed before the MSPB, the Court will only analyze the "mixed case appeal" branch of the decision tree. A "mixed case appeal" is an appeal filed with the MSPB "that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age." 29 C.F.R. § 1614.302(a)(2); see 5 C.F.R. § 1201.3 (establishing appealable agency actions). A "mixed case appeal" is one determined by the MSPB to fall within its jurisdiction, that is, "a case which presents an appealable non-discrimination claim coupled with a discrimination claim." Sloan, 140 F.3d at 1259. "The MSPB must decide it has jurisdiction over a case before it becomes a 'mixed case appeal.'" Id. When the MSPB takes a "mixed case appeal," it must consider both the discrimination claim and the adverse personnel action. Frank v. Ridge, 310 F. Supp. 2d 4, 8; 5 U.S.C. § 7702(a).

It is well-established that an employee who pursues a "mixed case appeal" will first receive an initial decision from an MSPB administrative law judge. Id.; 5 C.F.R. §§ 1201.41(b), 1201.111. The initial decision becomes final thirty-five (35) days after it is issued. 5 C.F.R. § 1201.113. However, the employee may petition the MSPB for review of the initial decision if she is dissatisfied with the outcome. 310 F. Supp. 2d at 8; 5 C.F.R. § 1201.113(a). If the employee petitions the

5

MSPB for review, the MSPB must either deny the petition which renders the initial decision final, or grant the petition and issue its own final decision. 310 F. Supp. 2d at 8; 5 C.F.R. § 1201.113(b)-(c). If the employee is dissatisfied with the MSPB's final decision, she may appeal the entire case to federal court, appeal the discrimination claim to the Equal Employment Opportunity Commission, or appeal the adverse personnel action to the Federal Circuit. 310 F. Supp. 2d at 8; 5 U.S.C. § 7703(b); 5 U.S.C. §§ 1201.120, 1201.157, 1201.175; 29 C.F.R. § 1614.310(b). A final decision made on jurisdictional grounds is only appealable to the Federal Circuit. 310 F. Supp. 2d at 8-9.

An employee has thirty (30) days to appeal from the date a final decision is issued by the MSPB. 5 C.F.R. §§ 1201.157, 1201.175; 29 C.F.R. § 1614.310(b); 5 U.S.C. § 7703(b)(2). In a "mixed case appeal," the discrimination issue <u>and</u> the appealable adverse personnel action must be decided on the merits by the MSPB before the employee is allowed a trial de novo in federal court. 310 F. Supp. 2d at 9. However, if the MSPB fails to issue a final decision within 120 days of when the employee filed the "mixed case appeal," the employee may file an action in federal court. 5 U.S.C. § 7702(e)(1)(B).

The evidence that pertains to Wilkie's appeal before the MSPB is muddled and confusing at best. It is clear that Wilkie's appeal to the MSPB was docketed on July 6, 2006, and then assigned to Administrative Law Judge James Kasic. On July 10, 2006, Wilkie was instructed by the MSPB that her appeal would be dismissed for lack of jurisdiction if she did not provide factual evidence that her resignation was caused by duress or coercion. There is no indication from the record of what steps Wilkie took to provide the requested factual evidence, or if she ever provided any information to the MSPB. It appears from the record that the MSPB has never determined whether it has jurisdiction over Wilkie's appeal. For reasons not entirely clear to the Court, virtually no

progress was made on Wilkie's appeal until November 30, 2006. Apparently, between July 10, 2006, and November 30, 2006, efforts were undertaken to try and settle the dispute to no avail, but little else is clear from the record. There are references to extensions of time and delays of the jurisdiction hearing before the MSPB with the delays generally made at the request of the parties. Wilkie's appeal was dismissed without prejudice on November 30, 2006, pursuant to an agreement of the parties, and then "re-docketed" or re-filed on February 20, 2007. This delay was also agreed to by the ALJ and the parties to allow the parties to further explore settlement options. Finally, on February 27, 2007, the ALJ, in a document entitled "Initial Decision," dismissed Wilkie's appeal after she had informed the MSPB of her intention to withdraw the appeal and pursue the matter in federal district court. This step appears to have been taken after assurances from the ALJ that it was a permissible route to take. The Court is now asked to determine whether this convoluted and confusing series of events constituted an exhaustion of Wilkie's administrative remedies.

It is clear that the first step in an action brought as a "mixed case appeal" is for the Merit Systems Protection Board (MSPB) to determine whether it has jurisdiction to hear the action. See Sloan v. West, 140 F.3d 1255, 1259 (9th Cir. 1998). Once the MSPB has determined that it has jurisdiction, then an appeal before the MSPB becomes a "mixed case appeal." Once an appeal is officially a "mixed case appeal," it goes forward with the decision tree process as set forth above. In every "mixed case appeal" there needs to be an initial decision and a final decision issued by the MSPB. It is clear and undisputed that the MSPB has never determined whether it has jurisdiction over Wilkie's appeal.

The Court finds that Wilkie has failed to exhaust her administrative remedies. Wilkie filed a complaint in federal district court prior to any final determination being made by the MSPB as to

whether it had jurisdiction. The record clearly reveals that the ALJ and the parties contemplated the possibility of this finding. Counsel for Wilkie expressed concern of this result to the ALJ. The ALJ expressly ordered that Wilkie could still re-file an appeal with the MSPB within thirty (30) days of any ruling by a federal district court not allowing a trial de novo for failure to exhaust administrative remedies.

The Court recognizes that this ruling will further delay these proceedings which have already lingered far too long. However, a ruling to the contrary (a finding that administrative remedies have been exhausted) would result in a trial in September 2008, the certainty of an appeal by one of the parties to the Eighth Circuit, and a decision from the circuit no sooner than late 2009. The likely result of any appeal under the current state of the law in the Eighth Circuit would be a remand for failure to exhaust administrative remedies. In other words, a contrary ruling would most likely place the parties in the very same position they are today, but with another year having gone by resulting in delay, uncertainty, and the needless expenditure of resources. This ruling is the most prudent and cost-effective manner to address the complex and confusing issues which remain in this case, and this ruling will minimize the time and expense to be expended by all concerned. The Court **GRANTS** the Defendant's Motion to Dismiss Wilkie's Title VII claim because the Court lacks subject matter jurisdiction due to a failure to exhaust administrative remedies.

### B.     WILKIE'S REMAINING CLAIMS

In addition to the Title VII claim, Wilkie has asserted other claims of intentional and negligent infliction of emotional distress, violations of her First and Fourteenth Amendment rights, claims of libel, slander, and defamation, and claims that her rights as a whistle blower were violated.

Wilke asserts that the Defendant's actions "have caused plaintiff extreme emotional and physical distress, have damaged her personal and professional reputation, have cost her substantial monetary losses and have denied her rights guaranteed to her by the hospital by-laws and regulations, by State and Federal laws, and by State and Federal Constitutions." See Docket 1. It is clear from Wilkie's complaint that each of her remaining claims is a direct result of the actions that led to the pursuit of a Title VII claim.

It is well-established that "Title VII 'provides the exclusive judicial remedy for claims of discrimination in federal employment.'" Gergick v. Austin, 997 F.2d 1237, 1239 (8th Cir. 1993). When "the same set of facts supports a Title VII claim and a non-Title VII claim against a federal employer, Title VII preempts the non-Title VII claim." Mathis v. Henderson, 243 F.3d 446 (8th Cir. 2001).

It is clear from the record that Wilkie's tort claims and constitutional claims are essentially based on the same facts that support a Title VII claim and, as such, the other claims asserted would arguably be pre-empted by the Title VII claim. As previously noted, Wilkie has failed to exhaust her administrative remedies before the Merit Systems Protection Board and, as a result, this Court does not have subject matter jurisdiction over the Title VII claim. In the interests of judicial economy, the Court will hold in abeyance Wilkie's remaining tort claims and constitutional claims until the Merit Systems Protection Board first addresses the claim(s) pending before it as a result of this decision. The Court **DENIES** the Defendant's Motion to Dismiss as it relates to Wilkie's tort claims and constitutional claims and will hold such claims in abeyance pending a final decision from the Merit Systems Protection Board.

### III.     CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** the Defendant's Motion to Dismiss (Docket 17) and **FINDS AS MOOT** the Defendant's Motion for Summary Judgment (Docket 17).

**IT IS SO ORDERED**.

Dated this 24th day of March, 2008.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court